DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Luis M. Valdez, | ) | |
| | ) | CASE NO. 4:05 CV 1672 |
| Petitioner-Defendant | ) | CASE NO. 4:02 CR 273 |
| | ) | |
| v. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent-Plaintiff | ) | |
| | ) | |

## I.  Introduction

The petitioner has filed a *pro se* motion petitioning the Court to adjust his sentence under the

provisions of Rule 60(b).  The Court has directed that the case be considered under the provisions of

28 U.S.C. §2255 and as an application to vacate, set aside or correct the petitioner's sentence.  The

government filed a brief in opposition  (Docket No. 5) and the petitioner has filed a reply (Docket No.

6).

## II.  The History Leading to the Petitioner's Incarceration

The petitioner was indicted for conspiracy to possess with intent to distribute powder cocaine

on July 2, 2002.  After a jury was impaneled to try the case, the petitioner entered a plea of guilty to the

crime of conspiracy, pursuant to a written plea agreement, which set the amount of the cocaine

attributable to the petitioner as in excess of 3 kilograms.  As a consequence, the petitioner was facing a

mandatory minimum sentence of 60 months under the provisions of 21 U.S.C. § 841(b)(B)(ii).  The

written plea agreement (Docket No. 154) indicated that the quantity of cocaine, specified as 3,926.3

(4:02 CR 273)

grams of cocaine, would result in an offense level of 30[1]; that the government would agree to a

reduction in the base offense level of two levels for acceptance of responsibility in spite of the fact that

the jury has already been impaneled; that the government was in agreement that no specific offense

characteristics were appropriate to raise the offense level; and further agreed that the petitioner might

qualify for a two level safety valve reduction and if so, that the offense level would be 26.  There was

no agreement on the criminal history, but it was subsequently determined that the petitioner's criminal

history was I and the petitioner was found by the Court to qualify for the safety valve reduction.

The Offense Level of 26 with a criminal history of I called for a sentencing range of 63 to 78

months.  The Court sentenced the petitioner to a sentence of 66 months.   The petitioner did not file a

direct appeal.

Paragraph 12[2] of the Plea Agreement provided as follows:

Defendant's rights, in limited circumstances, to appeal the conviction or
sentence in this case, including the appeal right conferred by 18 U.S.C. §3742, and to

---

[1]Paragraph 12 in the Plea Agreement is entitled Factual Basis and provides:

The defendant states that from a time unknown, but at least as early as
February 2002 and continuing through June 4, 2002, that he possessed with the intent
to distribute 3,926.3 grams of cocaine in concert with one or more of the other
members of the conspiracy as set forth in Count 1 of the indictment.  The defendant
further states that on June 4, 2002, officers from DEA lawfully seized approximately the
3,926.3 grams of cocaine secreted in a compartment in a Nissan Sentra in which the
Defendant and/or members of the conspiracy had transported from New York to the
Northern District of Ohio.  The defendant states he jointly possessed the cocaine with
the intent to distribute it.  Finally, the Defendant states that he is pleading guilty to Count
1 because he is, in fact, guilty of the offense conduct set forth in Count 1.

[2]Inexplicably, the written Plea Agreement has two paragraphs numbered 12.

2

(4:02 CR 273)

challenge the conviction or sentence collaterally through the post-conviction proceeding, including a proceeding under 28 U.S.C. §2255.  To the degree permitted by the Ohio Code of Professional Responsibility, which governs both prosecutors and defense attorneys, Defendant expressly waives those rights, except as reserved below. Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; (b) any punishment to the extent it constitutes an upward departure from the Sentencing Guideline range deemed most applicable by the Court.  Nothing in this paragraph shall act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or governmental misconduct.

### III.  The Petitioner's Miscellaneous  Assertions in Support of a Corrected Sentence

The petitioner cites *Booker/Fanfare* in support of a reduced sentence.  However, the mandates of *Booker/Fanfare* are not retroactive in the context of applications brought pursuant to a habeas action sounding under Section 2255.

The petitioner also cites the advanced age of his parents and the fact that his three minor children are in need for the care, support and love of their father.

The petitioner also cites the fact that he has enrolled in B.O.P. programs to better his opportunity to become a successful person after incarceration.  Unfortunately, the Court has no power to revisit the sentencing of the petitioner based on his parental and parenting responsibilities, nor may the Court modify a sentence based on the successful completion of programs offered by the B.O.P. even though the Court finds commendable the petitioner's efforts to prepare himself for the return to his family.

(4:02 CR 273)

<u>IV.  The Petitioner's Claim of the Denial of the Effective Assistance of Counsel</u>

The Court construes the *pro se* petition to raise a claim of the ineffective assistance of counsel in the context of the sentencing in the following passage:

> The petitioner, was sentenced to 66 months in prison on February 23rd, 2003. <u>During the sentence the Honorable Judge made a unique and unusual offer to myself as well as the remaining defendants of such case.  The offer made by the judge was as follows: Waive their right's to remain in the United States, via accepting deportation without asserting due process rights by hearing(s), i.e., trial and he the judge will reward the defendants an additional 1 level decrease (departure).</u>  Although this offer showed wisdom and perhaps fairness, the judge clearly made a legal error in his offer when he requested that their due process right's (Rules) be violated.  The attitude of the defendant's counsel could have been considered outrageous when he adamently and inexplicably recommended the petitioner (his client) to reject such an offer.  The counsel promised the petitioner that he would attempt a more productive and legal way to get such departure, in which he failed to even attempt after all this time.
> (Emphasis added).

The court has ordered a transcript of the sentencing of petitioner-defendant Valdez.  A copy of the transcript is attached to this Order.

As indicated in the transcript of the sentencing hearing, the petitioner-defendant Valdez was facing a mandatory minimum sentence of 120 months absent the application of the safety valve .  The court resolved that issue in favor of Valdez.  As a consequence, the offense level was reduced to 26, with a criminal history category of I.  As a consequence the sentencing range was 63 to 78 months. The government argued for a sentence of 78 months.  Defendant's counsel then argued for a sentence of 63 months, commenting on defendant's family situation.  Before the court pronounced the sentence, Valdez was given the opportunity to speak and he stated as follows:

4

(4:02 CR 273)

    A.      Okay.  First of all, I'd like to wish a good morning to everybody who's here, and I want to express to Your Honor  that I know I'm guilty of what I've been accused.

    And so I've accepted my responsibility.

    The only thing I hope for is that God will touch your heart so that he will allow me to be with my children, my son, as soon as possible.

    THE COURT: I didn't hear the last thing he said.

    A.  So with that I ask you that you give me the lowest sentence.

Against that admission of guilt, Valdez has filed a reply brief to support his motion to reduce his sentence and claims that his lawyer was "deficient and his professional ethics was deplorable and unscrupulous."  In support of that claim Valdez states as follows:

1.    Mr. Adamson contacted my wife and convinced her that he will win the case. Mr. Adamson played with and manipulated my wife's mental condition offering her his services to represent petitioner.

2.    Mr. Adamson knew important issues about petitioner"'s case enough to convince my wife and myself to get hired.  Mr. Adamson said that the labe (sic) report was the key to win the case but he never requested to have it done again and he never challanged (sic) it either.

3.    Mr. Adamson did not prepare himself to go to trial.  Mr. Adamson took the case twenty days earlier if he had any intention to win, he could have postponed the trial.

4.    Mr. Adamson real goal was to take the money from my wife.  Mr. Adamson got paid November 22, 2002, and two days later, on a Sunday night, he communicated to Petitioner he was done.

Mr. Adamson greediness and unethical professional attitude not only left Petitioner's wife broke and devastated, he also made Petitioner waste several opportunities to

(4:02 CR 273)

negotiate with the government's representative who was willing to get this case done and there was a very good probability to have a better negotiation and there was another person who suffer the consequences of his performance, this person was Juan Valdez, Petitioner's brother.  Even the government admitted that Juan Valdez minimum involvement in the case and he had nothing to do with this as we "conspirators" declared that Juan was there without knowing what was going on.  So when Petitioner signed the plea agreement, it was too late for Juan to withdraw from trial and this guiltyness is going to be with me forever since I was the one who invited Juan to drive his new van for a long ride.  But going back with Mr. Adamson, during sentencing when the Honorable judge offered me the opportunity to sign deportation in exchange, Petitioner was getting one point downward.  Inexplicably Mr. Adamson made Petitioner refuse being again prejudicial to my cause.

In conclusion, Mr. Adamson did not render adequate assistance.  Mr. Adamson did not meet the requirements needed to be an officer of the court when his main duty was to be mediator, something he began doing after he got paid.  Actually, if Mr. Adamson wouldn't have appeared, the results of the proceedings would had been different.

Petitioner is aware and is very thankful that his case and his sentence was handled with fairness.  Petitioner made a bad choice when he let himself get involved with drugs.  The main intention throug (sic) this motion is to get a reduction of his sentence.  Petitioner is confidence (sic) that the fairness and wisdom showed by the Honorable Judge will prevail.  Petitioner needs an opportunity to show his ailment parents that all the good example, moral and humility that Petitioner received when he was growing up still is in his heart.  I ask again for forgiveness for participating to damage and hurt the society of this wonderful country.  Petitioner needs to be back in his homeland and help his faithful wife take care of his old parents and children.

For the reasons mentioned above, Petitioner's motion to reduce his sentence should be granted.

### V. The Court's Ruling

The defendant's claim that he was offered a one level reduction in the offense level if he would

accept deportation without asserting due process rights is not reflected in the transcript of the

sentencing hearing.  After considering the allegations of the *pro se* petitioner in a light most favorable to

6

(4:02 CR 273)

the petitioner, the court finds that a claim that the petitioner was denied the effective assistance of counsel is not warranted.  The petitioner admitted at his sentencing that he was guilty.  A review of the sentencing transcript indicates that petitioner's counsel successfully persuaded the court to grant Valdez the safety valve credit which decreased his sentence from the mandatory minimum of 10 years to a sentence of 66 months.  Most of the claims advanced by the petitioner relate to the question of his guilt. Valdez admitted his guilt.  Under the teachings of Strickland v. Washington, 466 U.S. 668, 687 (1984), the petitioner must show that he was denied the effective assistance of counsel and that the denial negatively affected the outcome of the case.[3]   Given the petitioner's admission of guilt, and his counsel's successful prosecution of the safety valve issue, the court finds that petitioner's claims of ineffective assistance of counsel from the standpoint of a request for resentencing are not warranted.[4]

---

[3]The pivotal teaching in Strickland states:
> "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulting in the breakdown of the adversary process that renders the result unreliable."

[4]  Valdez claims that the court, in some fashion, suggested that Valdez waive his right to a deportation hearing, and accept deportation, in return for a one level reduction of the offense level.  The transcript of the sentencing hearing indicates that the court conferred with counsel in a side bar conference at the beginning of a sentencing hearing.  The court has no recollection as to the discussion in the side bar conference.  The court does have a vague recollection that at one time with respect to

(continued...)

7

(4:02 CR 273)

The court will publish a separate Judgement Entry denying the petitioner's request for

resentencing.

IT IS SO ORDERED.


 October 5, 2005                              _/s/ David D. Dowd, Jr._____
Date                                        David D. Dowd, Jr.
                                            U.S. District Judge

_____

[4](...continued)
the sentencing of an alien, that there was discussion about a reduction in the offense level conditioned upon a waiver of any rights of the alien with respect to deportation.  However, the court has no independent recollection as to whether such a discussion took place with respect to Valdez.  From a hypothetical standpoint, if such a reduction in the offense level from 26 to 25 had taken place, Valdez would still have faced a mandatory minimum sentence of 60 months notwithstanding a Guideline range of 57 to 71 months.  The issue is whether the court should conduct an evidentiary hearing on such a possibility; i.e., the suggestion of a downward adjustment of one level in return for a waiver of deportation.  Under all the circumstances as outlined above, the court declines to schedule and conduct such an evidentiary hearing.